By the Court.—Sedgwick, Ch. J.
On the testimony given, the jury were at liberty, in my opinion, to find these facts : The defendant Gr. W. Watson and the defendant Sheridan were shareholders of an electric light company. The financial condition of the company was bad. Its shares were or would soon be of no value, unless money were raised and lent to the company. An arrangement was made, not at first reduced to writing in any part. The defendant Watson was to lend to 'the company his two notes, in $2,500 each, payable to the order of defendant Sheridan. Sheridan, who was a large shareholder, was to sell to defendant Watson one thousand shares, and the latter was to pay for them, we will say, two other notes of $2,500, to the order of Sheridan. In fact, a writing to be hereafter referred to, provided that notes or cash were to be paid by Watson. With the money to be received by Sheridan from the discounting of the latter two notes, he was to lend part, say $2,000, to ffrb company. Sheridan and Watson were to agree to use their power as shareholders, together and in harmony. Thereupon, on October 28, 1882, the defendants Sheridan and Watson signed an agreement in writing that recited that Sheridan owned 3,085 shares and Watson “ has lately become and is now the owner of 1,932 shares,” and also that Sheridan “ has sold or caused to be sold to said Watson, 1,000 of the 1,932 shares of said stock now held-by him.” It then provided that they should act in a common manner as to the affairs of the company.
Contemporaneously the parties signed another agreement made in consideration of $1, and of the stipulations of the agreement already referred to, that Sheridan agreed to sell and transfer one thousand shares for the sum of $5 a share, “ and upon payment therefor, in the manner hereinafter stated, to deliver to said Watson certificates for said one thousand shares ; that Watson agrees to purchase and does hereby purchase the shares and to pay therefor ” either in cash or a promissory note made by said Watson payable in sixty days and indorsed by the third defendant, and that said “ stock is to be delivered and paid for on October 31,1882.”
*55 Subsequently the defendant Watson made to the order of Sheridan, four promissory notes, one of which is the note in action, for $2,500, each, payable in ninety, not sixty days. Sheridan indorsed them, as the other defendant then did. Defendant Watson entrusted the notes to Sheridan for the purpose only of it being ascertained, whether they could all be discounted, and for what rate, and with the direction that none should be discounted unless all were. After some ineffectual effort to discount them, Sheridan, without further communication with defendant Watson, appropriated the note-in action and one other, to himself, and returned to Watson the other two, tendering and offering to transfer, at the time of this return, a certificate for the 1,000 shares. The tender and offer were rejected.
On this state of facts, my opinion is, it was a question for the jury as to whether the note had ever been delivered, and as to whether it had been delivered in payment for the shares, under agreement for the sale and delivery.
There was certainly enough testimony to go to the jury upon the question whether the actual first disposition of the note by Sheridan was not in fraud of Watson, so as, to entitle the latter to call upon the plaintiff to show that he was a bona fide holder for value. If the notes were delivered to Sheridan for the purpose of seeing as to its discount with the other, it was not a delivery to him as payee or to invest him with title or power and right of disposition.
To be sure, if it were the fact, that, as plaintiff’s counsel argues it was, upon the evidence, defendant paid the note upon his obligation to pay it under his agreement to buy the shares, of course the defendant was liable. But of this there was no irresistible evidence. The defendant denied it. The fact that the shares were not tendered, until after Sheridan had received the notes, was to be considered by the jury. There was no conclusive evidence that the defendant was bound to take the shares and pay for them. If there were, that is not conclusive to show that the payment was actually made. A payment is a voluntary matter *56 and depends upon what was done actually. The account of the defendant had some argument for it, based upon the purposes of the parties and the probability of absolute purchase of the shares, as valuable property, before a preliminary investigation had been made to find if those purposes could be accomplished.
Against the conclusion that would follow these considerations, the principal argument is, that the defendant was so self-contradicting, that the jury would not have a right to find any fact on his testimony. Especially until the agreement for the purchase by him of the 1,000 shares were shown to him, on cross-examination, he insisted that the only written agreement was that one which referred to their acting together, and that the arrangement as to the four notes was made after and upon that. He was also confused in his testimony, and probably he stretched the case for himself, as most parties to an action do, when they testify. His self-contradiction consisted mainly in his substituting an oral agreement to buy, for the written agreement. On the whole, if the jury had found for the defendants a consistent and not improbable chain of facts might be found in the testimony. Although if the jury should say otherwise or discredit the defendant, the verdict would be sustained.
Judgment reversed, with costs to abide the event.
Truax and O’Gorman, JJ., concur.